THE opinion of the Court was delivered by
Tilghman C. J.
The President and board of directors ^ l^e “^1 aect*ori °f the 1st school district, have obtained a *455 rule on the controllers of the public schools of the said 1st district, to shew cause, why a mandamus should not be issued, commanding them to draw orders on the county treasurer, in favour of Solomon Humphreys, for payment of thirteen dollars and twenty cents, being for tuition of poor children, and stationary furnished for their use. The cause shewn by the controllers against 'this rule, is, that the sums charged for ... , . , , , , , tuition and stationary, are larger than they ought to be, and higher than are charged for the same services in other sections of the district. On the other hand, it’is contended by the relators, that the controllers have no discretion, but are to draw orders for any sums, which they (the directors) play think proper. ' ,
The education of the poor, is an object which the people of Pennsylvania have alw'ays had much at heart.. Great sums have beén, expended without producing all the good which was expected, and at length a'particular system was fórmed for the 'eity and county ,of Philadelphia, from which very beneficial consequences have already flowed, and more are anticipated. This system is comprehended in several Acts of Assembly, which must bp contidered and construed, as parts of the whole. As is usual in such cases, there are.some obscurities, and perhaps some trifling inconsistencies^ which it' is'the duty of the Court tó re:oncile, if possible. The different circumstances of different parts of the county of Philadelphia, which, (including ae city,) forms the 1st district of this State, rendered it necessary to adopt different modes of education.' In the city, the Northern Liberties and Kensington, Southwark, Moyamenáng, Passyunk and Penn township, thp population being great and dense, it was thought, best to establish-schools.on Lancaster's principles.' But, in other parts of the county, this plan would not suit,' and the poor children were to be sent :o such schools as could be found in the neighbourhood. The city and county were divided into- sections. Directors for each -section were to be chosen, and appointed in the manner prescribed} by the law, and besides, there, was to be a board of controllers, who were to have the general superintendance of-the whole. The 7th section was composed of the townships of Blackley and Kingsessing, in which there are five directors, appointed by the Court of Quarter Sessions, This section, having a.popu *456 lation less compact than some, of the others, was not calculated for Lancaster’s system, and, therefore, the directors were to-send such, as in the.r opinion came under the description of poor, to such schools as they'might think proper, and in order to" defray the accessary expenses, they were authorised by the Act of the 3d of March, 1818, to draw C0Unt^ ^unc*s’ such sums as should be necessary, in the same proportion as should be drawn by other■ sections, or school districts, for the like purpose. This is all the restraint imposed on them, as to the quantum to be drawn, and a very useful restraint it was, as the public had suffered grievously, from the extravagant charges, as well as thé negligence of schoolmasters. ' If it be asked, what is the meaning of the sanie propbrtion, it may be answered, that the di» rectors of one section .were not to go a greater average expense,. for any given number of children, than was paid by the directors of the other sec.ions in similar circumstances, that is to say, which were nofunder the system of Lancaster. The reduction of the expenser.of education to the same ave-rage, throughout the district, is evidently the most advantageous and economical plan, and if persevered in by all the directors, there is little doubi that it will be accomplished. Indeed, it appeafs,. that excep; in .the 7th section, the thing is already done. If the matter had rested, on the Act of the 3d of March,, 1818, the contrdlers would have had nothing to do with it, for the directors of the 7th district would have drawn ifnmediately on the cotnty treasurer, and if they had over drawn, they might have seén checked, by the auditors. But by the Act pf the 23d of January, 1821, it is made the duty of the directorsof those sections, which have no schools on -Lancaster’s system, (and which, consequently, are not under the immediate care of- tie controllers,^ “ to examine the accounts, of the expenses oi their respective sections, and when the same are found to be correct, to certify and transmit them id the controllers, who shall draw their orders on the county treasurers, for the amount of the same, under the same regulations and restrictions, as other orders are drawn b^, the -said controllers.” This last clause, taken by itself, would seem imperative, and1 to take away all discretion from the controllers. But, it must be considered in conjunction with the Act of March, 1818,. and being thus considered, *457 it remains liable to the restraint imposed by that Act, of' dr awing.in the same proportion as-other sections; for there is nothing in the last Act, which intimates an intention to vary the rate of proportion which had been before'established. This matter of drawing orders, is justly considered by the Legislature, of the first importance,, and accordingly the controllers are made liable to- a great penalty, by the 8th section of the Act of March, 1818, if they draw any order, unless a majority of tfieir whole number be present. The question,* then,-is simply this—shall this Court-compel the board of controllers to draw their order for payment of an account, •which in their opinion,is overcharged—an account which- exceeds the proportion of expense incurred for the same services in other districts ? I am of opinion that they ought not to be. compelled. It is not at all surprising, however, that there should be a difference of opinion on this point, between the respectable gentlemen who cómpose this board of controllers, and the board of directors of the 7th section. There was something like an intimation, that the directors would resign, unless the law were decided in their favour. But I 'trust, they will think better of this. ■ They are discharging a very useful office, so much the more honourable, as it is without reward. They have been selected for. their good character, and the example of their withdrawing might have a bad effect. No doubt, their office is troublesome, and more so, from this little difficulty, which, has been- brought before the Court. I cannot help thinking, however, that it may be surmounted,, when it is understood by the school-master in this district, that the directors are not permitted to pay them more than is charged in other sections. But after all, if it should be proved, that tuition cannot be had at a lower rate,' it is in the power of the Legislature to give relief.
I am of opinion, that the controllers have shewn good cause against a mandamus, and therefore the rule should be discharged.. ’ , ,
Rule discharged.